# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 22, 2016　　　Decided November 4, 2016

No. 15–5121

CHARLES W. RAMSEY, JR.,
APPELLANT

v.

UNITED STATES PAROLE COMMISSION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01003)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for the appellant. *A.J. Kramer*, Federal Public Defender, was with her on the briefs.

*Daniel J. Lenerz*, Assistant United States Attorney, argued the cause for the appellee. *Elizabeth Trosman* and *John P. Mannarino*, Assistant United States Attorneys, were with him on the brief.

Before: HENDERSON and MILLETT, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972). But what if the parolee breaks the rules? More specifically, what happens if he commits a new offense? In the federal system, the United States Parole Commission (Commission) can revoke the offender's parole and order that he serve all or some of the remaining sentence in prison. The Commission can also retrospectively deny him credit for the time he has served on parole—his "street time"—so that his remaining sentence is the same as it was when he was released on parole.

These general principles guide our resolution of Charles Ramsey's appeal. In the 1970s, Ramsey was convicted of drug and firearm offenses for which he was sentenced to a total of 32 years in federal prison. In the 1980s, he was paroled and released from prison. In the 1990s, he violated the conditions of his parole by committing a new drug offense. He pleaded guilty to the 1990s offense pursuant to a plea agreement that said nothing about his past offenses, parole or street time. In this case, he filed a habeas corpus petition in which he argued that the plea agreement, as construed by the Southern District of West Virginia, terminated his parole or at least prohibited the Commission from using his 1990s offense to deny him credit for street time or for other parole-related purposes. Unpersuaded, the district court denied his habeas petition. 82 F. Supp. 3d 293 (D.D.C. 2015). We, too, reject his reading of the plea agreement and accordingly uphold the denial of his petition.

## I. BACKGROUND

### A. THE FEDERAL PAROLE SYSTEM

The Congress abolished parole for federal offenders in 1984, effective November 1, 1987. Sentencing Reform Act of 1984, Pub. L. No. 98-473, §§ 218(a)(5), 235(a)(1), 98 Stat. 1987, 2027, 2031 (Oct. 12, 1984); Sentencing Reform Amendments Act of 1985, Pub. L. No. 99-217, § 4, 99 Stat. 1728, 1728 (Dec. 26, 1985); *see Gozlon-Peretz v. United States*, 498 U.S. 395, 400 n.4 (1991). Remnants linger, however, because repeal did not affect offenders convicted before November 1987. Sentencing Reform Act § 235(b)(1)(A), 98 Stat. at 2032. Chapter 311 of title 18 continues to govern parole for such offenders. 18 U.S.C. §§ 4201-4218; *see* United States Parole Commission Extension Act of 2013, Pub. L. No. 113-47, § 2, 127 Stat. 572, 572 (Oct. 31, 2013) (extending parole system through October 2018).

As relevant here, section 4203 gives the Commission the power to "grant or deny an application or recommendation to parole any eligible prisoner[,]" 18 U.S.C. § 4203(b)(1), and to "modify or revoke an order paroling any eligible prisoner[,]" *id*. § 4203(b)(3). Section 4209 provides that, "[i]n every case, the Commission shall impose as conditions of parole that the parolee not commit another Federal, State, or local crime [and] that the parolee not possess illegal controlled substances . . . ." *Id*. § 4209(a). Section 4210(b)(2) applies to an offender who, having been released on parole, is "convicted of any criminal offense . . . punishable by a term of imprisonment, detention or incarceration in any penal facility . . . ." *Id*. § 4210(b)(2). In such a case, "the Commission shall determine . . . whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense . . . ." *Id*. Section 4211

gives the Commission authority to grant "[e]arly termination of parole" but only "[u]pon its own motion or upon request of the parolee . . . ." *Id*. § 4211(a). Section 4213 provides that "[i]f any parolee is alleged to have violated his parole, the Commission may" summon him to appear at a revocation hearing or "issue a warrant and retake" him. *Id*. § 4213(a)(1)-(2). Section 4214(d) provides that when a parolee is summoned or retaken and the Commission finds that he has violated a condition of his parole, the Commission may "restore the parolee to supervision," "reprimand" him, "modify" the conditions of his parole, "refer [him] to a residential community treatment center," "release" him "as if on parole" or "formally revoke parole." *Id*. § 4214(d).

The Commission's regulations are codified in 28 C.F.R. Part 2. Section 2.20 establishes guidelines that "indicate the customary range of time to be served [in prison] before release for various combinations of offense (severity) and offender (parole prognosis) characteristics." 28 C.F.R. § 2.20(b). Section 2.20's table of ranges is akin to the sentencing table of the United States Sentencing Guidelines. *See* U.S. SENTENCING COMM'N, U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (2015). The vertical axis in section 2.20 is divided into eight categories based on "Offense characteristics: Severity of offense behavior." 28 C.F.R. § 2.20. The horizontal axis is divided into four categories based on "Offender characteristics: Parole prognosis," also known as the offender's "salient factor score." *Id*. The shortest guideline range, stated in months, is "≤4." *Id*. The longest is "180+." *Id*. Pursuant to section 2.21, the guidelines in section 2.20 apply when the Commission considers reparoling an offender whose parole has been revoked. *Id*. § 2.21(b). Section 2.21 makes clear that the guidelines are just that: non-binding recommendations. *Id*. § 2.21(d) ("The above are

merely guidelines. A decision outside these guidelines (either above or below) may be made when circumstances warrant.").

Finally, section 2.52 governs the Commission's "[r]evocation decisions." Section 2.52(b) provides that, when the Commission revokes parole, it "shall also determine, on the basis of the revocation hearing, whether reparole is warranted or whether the prisoner should be continued for further review." 28 C.F.R. § 2.52(b). Section 2.52(c) sets forth "the Commission's interpretation of 18 U.S.C. 4210(b)(2)." *Id*. § 2.52(c)(2). The Commission's interpretation is that

> if a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence.

## B. RAMSEY'S PAROLE

With the foregoing provisions in mind, we recap Ramsey's odyssey through the parole system.

### 1. Ramsey's 1970s offenses and 32-year sentence

In February 1975, Ramsey began serving a maximum aggregate prison sentence of 32 years for importation of a controlled substance, unlawful possession of firearms and related offenses of which he was convicted in three federal cases in the District of Columbia (D.C.) and the Southern District of New York. His 32-year term was to be followed by six years of "special parole," the pre-Sentencing Reform Act

equivalent of supervised release. 28 C.F.R. § 2.57(a) (describing special parole as "an additional period of supervision which commences upon completion of any period on parole or mandatory release supervision from the regular sentence"); *see United States v. Todd*, 287 F.3d 1160, 1161 (D.C. Cir. 2002).

In May 1989, Ramsey was released on parole with about 17 years and nine months left of his 32-year term. Consistent with 18 U.S.C. § 4209(a), one of the conditions of his parole provided in part: "You shall not violate any law." United States' Resp. to Def.'s Mot. to Amend or Correct Sentence, Dkt. No. 3, Ex. 3 at 3. Another condition prohibited him from possessing drugs. *Id*.

### 2. Ramsey's 1995 cocaine offense and 2004 plea agreement

In November 1995, while on parole for the 1970s offenses, Ramsey was charged in D.C. district court with a new federal offense: possessing with intent to distribute cocaine. He was immediately detained pending trial. Based on the cocaine charge, the Commission issued a warrant alleging that Ramsey had violated his parole. The U.S. Marshals Service lodged the warrant as a detainer to be executed once he was released from custody on the cocaine charge. In May 1996, following a six-day trial, a jury convicted him of the cocaine offense. In an August 1996 presentence report (PSR), the United States Probation Office noted that Ramsey had been continuously detained for the cocaine offense since November 1995 and that, on completing his sentence for that offense, he would still be subject to a detainer for violating his parole on the 1970s offenses. In December 1997, the district court sentenced him to 210 months of imprisonment for the cocaine offense.

For nine years and one month, Ramsey was in prison for the 1995 cocaine offense. In 2004, the district court concluded that the lawyer who had represented Ramsey during the trial on the cocaine offense had rendered ineffective assistance. *United States v. Ramsey*, 323 F. Supp. 2d 27, 35-44 (D.D.C. 2004). The court ordered a new trial. *Id*. at 44.

Foregoing an appeal or retrial, the D.C. United States Attorney's Office entered a plea agreement with Ramsey. The agreement provided that Ramsey was to plead guilty to the cocaine offense and receive a prison sentence of time served, to be followed by eight years of supervised release. Plea Agreement ¶¶ 1, 6.[1] Under paragraph 3 of the agreement, "[t]he parties agree[d] to accept" the PSR that had been prepared in August 1996. Paragraph 5 of the agreement provided:

> The United States Attorney's Office for the District of Columbia will not prosecute [Ramsey] for any other charges arising out of the transactions and events that are the subject of the [1995] indictment and this guilty plea.

And paragraph 6 stated in pertinent part:

> Since the sentence is to be time served, the parties contemplate that [Ramsey] will be processed for release by the U.S. Marshals Service in the cell block of the U.S. Courthouse and will be released to commence his period of

---

[1] The plea agreement is not on the district court's electronic docket but is available in *Ramsey v. Felts*, 5:06-cv-00637, Dkt. No. 3, Ex. 12 (S.D. W. Va. Aug. 16, 2006).

> supervised release from there without being returned to any other prison facility.

In December 2004, the district court accepted the plea agreement and sentenced Ramsey to time served for the cocaine offense (nine years and one month), to be followed by eight years of supervised release. But Ramsey was not released from custody. Instead, the U.S. Marshals Service executed the parole violator warrant the Commission had issued back in 1995. In other words, Ramsey remained in prison but was now serving time on his 32-year sentence for the 1970s offenses, not on his sentence for the 1995 offense.

### 3. The Commission's 2005 decision to revoke parole and deny credit for street time

In February 2005, Ramsey appeared with counsel for a hearing on whether the Commission, in view of the 1995 cocaine offense, should revoke parole on his earlier 32-year sentence. So far as the record reflects, he did not argue that the plea agreement terminated his parole or precluded revocation. Nor did he argue that the plea agreement prohibited the Commission from using his 1995 offense to deny him credit for his street time from May 1989 to November 1995.

In March 2005, the Commission indeed revoked Ramsey's parole based on his 1995 cocaine offense. Partly because of the offense's severity—it involved up to 44 kilograms of cocaine—he faced the highest possible guidelines range of 180+ months of reimprisonment under 28 C.F.R. §§ 2.20 and 2.21(b). Seeing no basis for a departure, the Commission ordered a reimprisonment term within the range and set a presumptive reparole date of October 21, 2014. Consistent with 28 C.F.R. § 2.52(c)(2), the Commission also

denied Ramsey any credit for his street time from May 1989 to November 1995.

Later in March 2005, Ramsey appealed the decision to the Commission's National Appeals Board, again without invoking the plea agreement. The National Appeals Board affirmed the Commission's decision.

### 4.  The 2007 decision in *Felts*

In August 2006, while serving time on his 32-year sentence at a federal prison in West Virginia, Ramsey filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Southern District of West Virginia. *Ramsey v. Felts*, 5:06-cv-00637, Dkt. No. 2 (S.D. W. Va. Aug. 16, 2006) (*Felts*). As relevant here, he claimed that the Commission was bound by the 2004 plea agreement and breached it by revoking parole and reincarcerating him based on his 1995 cocaine offense. *Felts*, Dkt. No. 3 at 10-11. In particular, he argued that the Commission violated paragraph 5, under which the D.C. United States Attorney's Office agreed "not [to] prosecute [Ramsey] for any other charges arising out of the transactions and events that are the subject of the [1995] indictment and this guilty plea"; and paragraph 6, under which Ramsey was to "be released to commence his period of supervised release . . . without being returned to any other prison facility."

The case was referred to a magistrate judge who agreed that the Commission was in breach of the plea agreement and recommended that the district court grant Ramsey's habeas petition. *Felts*, Dkt. No. 30 at 1, 24-25. The magistrate concluded that, taken together, "paragraphs 5 and 6 contain very significant promises to [Ramsey], the benefit of which he has not received." *Id*. at 21. She acknowledged that the parties to the agreement apparently "never gave the Parole

Commission a thought" and that paragraph 5 expressly bound only the D.C. United States Attorney's Office. *Id.* at 23-24. Nonetheless she reasoned that paragraph 6, in promising that Ramsey would be released from his jail term for the 1995 cocaine offense without having to return to any prison facility, necessarily affected the Commission. *Id.* at 21-22. In the magistrate's view, the tension between paragraphs 5 and 6 produced an ambiguity that had to be resolved in favor of release because (*inter alia*) the government wrote the agreement and bore "responsibility . . . for imprecision," *id.*; Ramsey had relied on the promise of immediate release when he pleaded guilty, *id.* at 24-25; and the promise "ha[d] not been fulfilled," calling into question the voluntariness of the plea and undermining "public confidence in the fair administration of justice," *id.* at 24.

No one objected to the magistrate judge's findings and recommendation. In August 2007, the district court in *Felts* adopted them and ordered that Ramsey "be immediately released" from prison so that he could "commence his period of supervised release" on the 1995 cocaine offense. *Felts*, Dkt. No. 31 at 3. The Commission immediately paroled him and indicated that he had about 15 years remaining on his initial 32-year sentence. Consistent with 18 U.S.C. § 4209(a), the Commission again imposed as a condition of parole that Ramsey not violate any law.

### 5. Ramsey's 2010 gambling conviction

Ramsey ran into new legal trouble in April 2010, when he was convicted in D.C. Superior Court for "maintaining a gambling premises." United States' Resp. to Def.'s Mot. to Amend or Correct Sentence, Dkt. No. 3, Ex. 20 (capitalization altered). The Commission issued another parole violator warrant, this one based on the gambling offense. The U.S.

Marshals Service executed the warrant upon Ramsey's release from a short jail term for the gambling offense.

In September 2010, Ramsey appeared for a hearing on whether the Commission, in view of the gambling offense, should revoke parole on his earlier 32-year sentence. In November 2010, the Commission in fact revoked his parole. Pursuant to the guidelines in 28 C.F.R. §§ 2.20 and 2.21(b), the Commission ordered that he spend another 12 months of the 32-year sentence in prison. The Commission's decision was based in part on its calculation that Ramsey had a salient factor score of 2. The salient factor score, in turn, was based on Ramsey's past offenses, including his 1995 cocaine offense. Finally, the Commission denied Ramsey any credit for his street time between August 2007 and April 2010, leaving him with about 15 years remaining on his initial 32-year sentence.

Ramsey served his 12 months of additional prison time and the Commission reparoled him in April 2011. At that point he had about 14 years left to serve on his 32-year sentence. He has been on parole ever since and now has about eight and one-half years left: his anticipated completion date is July 16, 2025. After that, he must serve his six-year term of special parole.

### 6.  The decision under review

In 2013, Ramsey filed a habeas petition in district court under 28 U.S.C. § 2241.[2]  He made two claims, the second of

---

[2]  Ramsey filed his habeas petition in the D.C. district court, naming the Commission as the respondent. The district court had subject-matter jurisdiction because Ramsey, as a parolee, remains "in custody" within the meaning of section 2241 even though he is not in prison. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (restraints on parolee's liberty "are enough to invoke the help of the

which had two components. *First*, he argued that the 2004 plea agreement, as interpreted in *Felts*, "authorized his release on supervised release alone" so that his parole was necessarily "terminated." Pet'r's Mot. to Amend or Correct Sentence, Dkt. No. 1 at 9-10. *Second*, he argued that the agreement at a minimum prohibited the Commission from using his 1995 cocaine offense (a) to deny him credit for street time in the 2005 parole revocation proceeding; and (b) to calculate his salient factor score in the 2010 parole revocation proceeding. In Ramsey's telling, the plea agreement's prohibition against "prosecut[ing]" him on additional charges based on his 1995 conviction meant that the Commission could not use the conviction to "penalize" him in any way. *Id*. at 11. It followed, in his view, that he was entitled to a remand to the Commission for recalculation of his sentence.

The district court rejected Ramsey's claims and denied his habeas petition. 82 F. Supp. 3d 293 (D.D.C. 2015). *First*, the court concluded that the plea agreement and *Felts* "did not terminate . . . [Ramsey's] parole from the 1970s cases." *Id*. at

---

Great Writ" even absent "immediate physical imprisonment"); *see* 18 U.S.C. § 4210(a) ("A parolee shall remain in the legal custody and under the control of the Attorney General, until the expiration of the maximum term or terms for which such parolee was sentenced."); *see also United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006) ("in custody" requirement of section 2241 goes to subject-matter jurisdiction). We need not decide whether the Commission is a proper respondent, or the D.C. district court a proper venue, because the Commission "raised no objections on grounds of venue or personal jurisdiction." *Fletcher v. Reilly*, 433 F.3d 867, 875 (D.C. Cir. 2006); *see Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 (D.C. Cir. 1988) ("It is, of course, elementary that a defense of improper venue or lack of personal (as opposed to subject matter) jurisdiction is waived unless the defense is asserted . . . .").

304; *see id*. at 303-05. The court pointed out that the 1970s cases were neither "the subject of" nor "referenced in" the 2004 plea agreement, which used the terms "'case'" and "'matter'" to refer solely to the 1995 cocaine case. *Id*. at 304 (citation omitted). In the court's view, although the agreement promised that Ramsey was to "'be released to commence his period of supervised release . . . without being returned to any other prison facility,'" neither that assurance nor the *Felts* decision "gave Mr. Ramsey license to commit new crimes without risking parole revocation and being sentenced to serve his back-up time." *Id*. The court emphasized that *Felts* "held only that . . . the Parole Commission could not require Mr. Ramsey to serve additional prison time as a parole violator based directly on his conviction in" the 1995 case. *Id*. at 305.

*Second*, the district court concluded that nothing in the plea agreement, as construed in *Felts*, prevented the Commission from using the 1995 cocaine offense to deny Ramsey credit for street time or to calculate his salient factor score. 82 F. Supp. 3d at 305-07. The court acknowledged that paragraph 5 of the agreement prohibited the D.C. United States Attorney's Office from "prosecuting" him based on the 1995 conduct that was the subject of his guilty plea. *Id*. at 306-07. It reasoned, however, that paragraph 5 "did not bind" the Commission, let alone in a way that foreclosed it from even "taking the [cocaine] conviction into account when calculating" street time or Ramsey's salient factor score. *Id*. at 307. Finally, the court emphasized that paragraph 6 of the agreement only "preclude[d] the Commission from reincarcerating Ramsey as a parole violator" "based directly on" the cocaine offense. *Id*. at 305-06. In the court's view, paragraph 6 did not displace "the applicable statutes, regulations, and case law" authorizing the Commission's

"actions with respect to Ramsey's parole." *Id*. at 306 (citing, *inter alia*, 18 U.S.C. § 4210(b)(2)).

## II.  ANALYSIS

On appeal, Ramsey renews essentially the same two claims he made in district court: (1) the plea agreement as construed in *Felts* terminated his parole or precluded revocation; or (2) at a minimum, it prohibited the Commission from using his 1995 cocaine offense to deny him credit for street time and to calculate his salient factor score.  Our review is *de novo*.  *See United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014) ("We interpret the terms of a plea agreement *de novo* . . . ."); *cf. United States v. TDC Mgmt. Corp.*, 24 F.3d 292, 295 (D.C. Cir. 1994) ("[w]e review *de novo*" question of what issues were decided in prior case involving same parties).  We reject Ramsey's claims as set forth below.

### A.  THE PLEA AGREEMENT DID NOT TERMINATE PAROLE OR PRECLUDE REVOCATION FOR FUTURE OFFENSES.

According to Ramsey, the plea agreement terminated his parole or at least prohibited the Commission from revoking it. "[W]e look to principles of contract law" to determine "the reasonable understanding of the parties." *Henry*, 758 F.3d at 431.  The leading indicator of their understanding is the agreement's "plain language." *See United States v. Jones*, 58 F.3d 688, 691 (D.C. Cir. 1995).  But there are additional indicators.  General customs of which the parties are aware, as well as the parties' conduct in carrying out the agreement, can aid in discerning what the parties meant by the words they used.  RESTATEMENT (SECOND) OF CONTRACTS § 203(b) (1981) ("usage of trade" and "course of performance" are relevant to "interpretation of a promise or agreement").

Applying those precepts to Ramsey's case, we reject his interpretation of the plea agreement. If he were right, the agreement would not only preclude revocation based on his 1995 cocaine offense but arguably would give him a free pass to commit *new* crimes—such as his 2010 gambling offense—without parole-related consequences. If that had been the parties' intention, we would expect them to have said so specifically because the arrangement would contradict the laws that otherwise govern Ramsey's parole. As we have discussed, the Congress required that parole "[i]n every case" be conditioned on the parolee's "not commit[ting] another Federal, State, or local crime," 18 U.S.C. § 4209(a), and it gave the Commission authority to revoke parole and reimprison the parolee for a violation, 18 U.S.C. § 4214(d). Parole would make little sense absent such a condition and without the Commission's ability to enforce it through reincarceration or other punishment. *Morrissey v. Brewer*, 408 U.S. 471, 478-79 (1972) ("The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules."). Dovetailing with sections 4209 and 4214, section 4211 gives the Commission exclusive authority to grant "[e]arly termination of parole" "[u]pon its own motion or upon request of the parolee." 18 U.S.C. § 4211(a).

It is questionable whether the D.C. United States Attorney's Office, without the Commission's authorization, had the legal authority to bargain around the foregoing statutes to terminate parole or forbid revocation. But we need not decide that issue. What matters here is that nothing suggests it meant to do so: the plea agreement said nothing about the Commission, parole, Ramsey's 32-year sentence or the age-old offenses from which that sentence stemmed. It did not say his parole was terminated. And it did not say the Commission

was forbidden from revoking parole for offenses subsequent to Ramsey's 1995 cocaine offense.[3]

Ramsey emphasizes the plea agreement's statement that he was not to "be[ ] returned to any other prison facility." Plea Agreement ¶ 6. He reasons that the agreement thereby "prohibited incarceration," leading him to believe that "it also prohibited revocation" based on any future offense because revocation would inevitably lead to incarceration. Appellant's Br. 25. But the agreement governed only "*United States v. Charles W. Ramsey*, Cr. No. 95-0326(PLF)," Plea Agreement p. 1—and stated that "[t]here are no other agreements, promises, understandings or undertakings between" the parties, *id*. ¶ 7—so it could not be construed to prohibit incarceration for all time and any offense. Instead, we read it to forbid any further incarceration based directly on the 1995 offense. *Id*. ¶ 6 (manifesting that, because prison term for 1995 offense was "to be time served," parties contemplated that Ramsey would be released from *that* term "without being returned to any other prison facility").[4]

---

[3] The closest the agreement came to discussing parole was paragraph 3, under which "[t]he parties agree[d] to accept" the August 1996 PSR. The PSR noted that, on completing his sentence for the 1995 cocaine offense, Ramsey was still subject to a detainer for violating his parole. Oral Arg. Recording 5:40-5:57, 11:35-11:49, 19:43-20:35. The PSR thus confirmed that Ramsey had time left to serve on his 32-year sentence. Neither the PSR nor the "agree[ment] to accept" it suggested the parties had agreed to terminate parole or to forbid revocation forevermore.

[4] The Commission makes the additional point that revocation need not lead to imprisonment. Appellee's Br. 24. We assume without deciding that the latter does not always follow the former. *See* 28 C.F.R. § 2.52(b) (after revoking parole, Commission must determine "whether reparole is warranted"); 28 C.F.R. §§ 2.20 and

Undeterred, Ramsey contends that, because the plea agreement "ordered [his] release on supervised release . . . with no mention of parole," it did not "contemplate[ ] continuing parole."  Appellant's Br. 25 (citing Plea Agreement ¶ 6).  He gets things backwards.  Under the governing statutes, the default was that Ramsey's parole carried forward subject to revocation for a future violation.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 222(3) ("*Unless otherwise agreed*, a usage of trade . . . of which [the parties] know or have reason to know gives meaning to . . . their agreement.") (emphasis added).  The agreement's bare statement about supervised release did not reflect any intent to displace the statutory default: far from ruling out parole, supervised release based on a new offense ordinarily runs concurrently with a preexisting parole term.  18 U.S.C. § 3624(e) ("The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of . . . parole for another offense to which the person is subject . . . .").

Ramsey's contemporaneous conduct reinforces our analysis.  In February 2005—barely two months after he signed the plea agreement—he appeared with counsel for a hearing on whether the Commission should revoke his parole because of his 1995 cocaine offense.  He did not argue, either to the Commission or to the National Appeals Board thereafter, that the plea agreement terminated his parole or precluded

2.21(b) (prescribing advisory reimprisonment ranges as short as "≤4," which suggests possibility of no reimprisonment).  Even so, that would not heavily bear on the parties' understanding of the plea agreement in *this* case: Ramsey's offense history all but guaranteed that he faced imprisonment in the event of revocation based on a new offense.  The Commission's decision to reimprison him for 12 months based on a minor gambling offense illustrates as much.

revocation resulting from any future offenses. If he had thought it did, he would have said so. *See* RESTATEMENT (SECOND) OF CONTRACTS § 202(4) ("[A]ny course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.").

Faced with dead ends in the statutes and the plea agreement, Ramsey turns to *Felts* but it does not aid him either. In *Felts*, the district court for the Southern District of West Virginia ordered Ramsey's immediate release because he could not be required to serve any additional jail time for the *1995 cocaine offense*. Crucial to *Felts*'s reasoning was that Ramsey had pleaded guilty in reliance on the prosecutor's promises (1) against "any other charges arising out of" the 1995 offense, *Felts*, Dkt. No. 30 at 23; and (2) that Ramsey was to be immediately "released to commence his period of supervised release" for the 1995 offense, *id*. at 14. *Felts* ensured that Ramsey received "the benefit of" those promises so that his "bargain" was "not frustrated." *Id*. at 21, 25.

*Felts* did not address, however, whether parole could later be revoked because of some *future offense* not even mentioned in the plea agreement. To the contrary, *Felts* acknowledged that, when drafting and signing the agreement, the parties "never gave the Parole Commission a thought." *Felts*, Dkt. No. 30 at 23-24. That acknowledgment forecloses any contention that *Felts* construed the agreement to terminate parole or precluded revocation for all time and any offense.

**B. THE PLEA AGREEMENT DID NOT PROHIBIT USING RAMSEY'S 1995 OFFENSE TO DENY CREDIT FOR STREET TIME OR TO CALCULATE HIS SALIENT FACTOR SCORE.**

Alternatively, Ramsey urges that the plea agreement prohibited the Commission from using his 1995 cocaine offense (a) in the 2005 revocation proceeding to deny him

credit for street time from May 1989 through November 1995; and (b) in the 2010 revocation proceeding to calculate his salient factor score. Both components of his contention are meritless.[5]

Ramsey relies heavily on paragraph 5 of the plea agreement. To repeat, paragraph 5 stated that "[t]he United States Attorney's Office for the District of Columbia will not prosecute [Ramsey] for any other charges arising out of" the 1995 cocaine offense. As an initial matter, Ramsey suggests that *Felts* interpreted paragraph 5 to bind the Commission, not simply the D.C. United States Attorney's Office. That construction is far from clear: *Felts* acknowledged that "paragraph five identified the only prosecutorial agency bound not to prosecute [Ramsey]," namely, "the 'Office of the United States Attorney for the District of Columbia.'" *Felts*, Dkt. No. 30 at 23. But even assuming paragraph 5 bound the Commission, a prohibition against "prosecut[ing]" Ramsey for additional "charges" based on his 1995 conduct would not prevent the Commission from using the conduct to deny him credit for street time or to calculate his salient factor score. Nothing in the plea agreement suggests that the parties meant for the words "prosecute" and "charges" to have anything other than their ordinary meaning. And in the criminal context, the ordinary meaning of "prosecute" is "[t]o institute and pursue a criminal action . . . ." BLACK'S LAW DICTIONARY 1416 (10th ed. 2014). Similarly, a "charge" ordinarily connotes "[a] formal accusation of an offense as a preliminary step to prosecution . . . ." *Id*. at 282. Denying credit for street time

---

[5] Ramsey advances additional arguments that the Commission miscalculated his parole but they turn entirely on the proposition—which we today reject—that the Commission could not revoke parole or use the 1995 cocaine offense to deny credit for street time.

and calculating a parolee's salient factor score do not institute a criminal action. Indeed, the Supreme Court has long held that "revocation of parole is not part of a criminal prosecution . . . ." *Morrissey*, 408 U.S. at 480. *A fortiori*, we cannot conclude that parole-related measures *short* of revocation are tantamount to "prosecution."

We recognize, as *Felts* did, that paragraph 6 of the plea agreement—promising that Ramsey was to be released from his jail term for the 1995 cocaine offense "without being returned to any other prison facility"—could be read to prohibit the Commission from reincarcerating Ramsey based directly on his 1995 conduct. In our view, however, that promise did not foreclose forfeiture of street time, especially because the agreement did not mention 18 U.S.C. § 4210(b)(2) or 28 C.F.R. § 2.52(c)(2). As noted, section 4210(b)(2) provides that "the Commission shall determine . . . whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense . . . ." And in section 2.52(c)(2), the Commission "interpret[ed]" section 4210(b)(2) to require forfeiture of street time as "an automatic statutory penalty."[6] If the parties had meant to displace the "automatic

---

[6] As Ramsey notes in passing, the Ninth Circuit has held that section 2.52(c)(2) contravenes section 4210(b)(2). *Rizzo v. Armstrong*, 921 F.2d 855, 859-61 (9th Cir. 1990). He does not mention, however, that at least three other circuits have concluded otherwise. *See Edwards v. Dewalt*, 681 F.3d 780, 786-87 (6th Cir. 2012); *Harris v. Day*, 649 F.2d 755, 759-60 (10th Cir. 1981); *United States ex rel. Del Genio v. Bureau of Prisons*, 644 F.2d 585, 587-88 (7th Cir. 1980). We need not weigh in on the conflict, for two reasons. First, nothing suggests the *parties here* agreed that Ramsey was to be exempt from section 2.52(c)(2). Second, Ramsey has not properly preserved a claim that section 2.52(c)(2) conflicts with the statute. He did not make the claim in his habeas

statutory penalty" by virtue of the plea agreement—assuming that would even be possible—presumably they would have done so more explicitly than paragraph 6 did. At least they would have mentioned the concept of street time; that it appears nowhere in the agreement shows that the parties reached no understanding about it. As if to confirm the point, Ramsey did not invoke the agreement at the February 2005 revocation hearing or before the National Appeals Board in an effort to preserve his street time. *See* RESTATEMENT (SECOND) OF CONTRACTS § 202(4).

Finally, paragraph 6 did not prohibit the Commission from using Ramsey's 1995 cocaine offense to calculate his salient factor score in 2010. The Commission used the score to weigh the likelihood that he would violate his parole on the *1970s offenses*. *See* 28 C.F.R. § 2.20(e) ("An evaluation sheet containing a 'salient factor score' serves as an aid in determining the parole prognosis (potential risk of parole violation)."). The Commission did not use the score to punish him directly for his *1995 offense*. *Cf. Witte v. United States*, 515 U.S. 389, 400 (1995) (use of past conviction at sentencing for new offense "is not to be viewed as either a new jeopardy or additional penalty for the earlier crime[ ], but instead as a

petition. Instead, he advanced it for the first time in an oblique one-sentence footnote in a reply supporting his petition. Unsurprisingly, the district court did not address it. We agree with several other courts that, ordinarily, a habeas petitioner does not preserve a claim by raising it for the first time in a reply. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (holding as much and citing additional cases from First, Seventh and Ninth Circuits). Moreover, even if Ramsey had preserved the claim in district court, his perfunctory appellate briefing does not suffice to raise it in this Court. *See Ry. Labor Execs. Ass'n v. U.S. R.R. Ret. Bd.*, 749 F.2d 856, 859 n.6 (D.C. Cir. 1984).

stiffened penalty for the latest crime, which is considered to be an aggravated offense") (internal quotation marks omitted).

**\* \* \* \* \***

Nothing in the 2004 plea agreement or in *Felts* terminated Ramsey's parole, precluded revocation for future offenses or prohibited the Commission from using his 1995 cocaine offense to deny him credit for street time or to calculate his salient factor score. We therefore affirm the judgment of the district court denying Ramsey's petition for a writ of habeas corpus.

*So ordered.*