# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 27, 2022          Decided May 20, 2022

No. 18-5233

ARTIE DUFUR,
APPELLANT

v.

UNITED STATES PAROLE COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00677)

———

*Caroline A. Flynn,* appointed by the court, argued the cause for *amicus curiae* in support of appellant. With her on the briefs were *Roman Martinez* and *Morgan Hoffman*, appointed by the court.

*Marsha W. Yee*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *R. Craig Lawrence* and *Peter C. Pfaffenroth*, Assistant U.S. Attorneys.

Before: ROGERS and PILLARD, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

Dissenting opinion by *Senior Circuit Judge* RANDOLPH.

ROGERS, *Circuit Judge*:  Upon escaping from a California state prison where he was serving a life sentence for two murders, Artie Dufur killed a federal law enforcement officer. After his conviction for that murder, he led several other inmates in another attempted escape.  A federal district judge sentenced Dufur to life in prison in 1979, and he has now served more than forty years of that sentence.  Dufur sued the United States Parole Commission, alleging that the Commission violated his due process rights and exceeded its statutory discretion when it denied him parole in 2016.  This court concludes that although the district court had subject matter jurisdiction to consider the merits of Dufur's claims, Dufur has not plausibly alleged that the Commission exceeded its statutory discretion or violated his constitutional right to due process.  Accordingly, the district court's dismissal of his complaint is affirmed.

## I.

In 1976, Congress enacted the Parole Commission and Reorganization Act, Pub. L. No. 94-233, 90 Stat. 219 (1976), citing "almost universal dissatisfaction with the parole process at the beginning of [the 1970s]," H.R. REP. NO. 94-838, at 20 (1976) (hereinafter, "Conf. Rep.").  The Act codified revisions to the federal parole process that had met with success when implemented administratively, including, "most importantly, the promulgation of guidelines to make parole less disparate and more understandable."  *Id.*  It created the United States Parole Commission "as an independent agency in the Department of Justice," 18 U.S.C. § 4202, to "promulgate rules and regulations establishing guidelines for" parole

determinations, *id.* § 4203(a)(1), and to "grant or deny an application or recommendation to parole any eligible prisoner," *id.* § 4203(b)(1).

Under the amended parole regime, federal prisoners became eligible for parole at the Commission's discretion once they had served certain minimum portions of their sentence, *id.* § 4205, based on the Commission's evaluation of their behavior record while incarcerated, their offense conduct and criminal record, and whether release would "promote disrespect for the law" or "jeopardize the public welfare," *id.* § 4206(a). Upon serving a significant portion of a longer sentence, the statute provided that a prisoner "shall be released on parole" unless the Commission finds that the prisoner "has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime." *Id.* § 4206(d). By contrast with discretionary parole, this provision was intended to provide "more liberal criteria for release on parole." Conf. Rep., at 27.

Congress overhauled the parole system again in 1984, amid continuing concerns about the federal parole regime. It replaced parole with supervised release and directed the creation of federal sentencing guidelines to make the time actually served by federal prisoners more standardized and predictable. Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987; *see Tapia v. United States*, 564 U.S. 319, 323–25 (2011). The provisions of the 1976 Parole Act, however, remained in effect for federal prisoners sentenced under that regime. *See Howard v. Caufield*, 765 F.3d 1, 2 n.1 (D.C. Cir. 2014); Pub. L. No. 116-159, § 4202, 134 Stat. 709, 741 (2020).

Artie Dufur's criminal record culminated in a federal sentence that remains parole eligible. In the early 1970s, Dufur

was convicted in state court of two murders and received a life sentence. Dufur served about five years of that life sentence and then escaped. Still at large two years later, Dufur was pulled aside for an inspection at a Canadian border checkpoint. There he shot and killed the federal customs inspector. After being convicted of the murder and of assaulting a federal officer, but before sentencing on those charges, Dufur unsuccessfully attempted another escape. During this escape attempt, an officer was injured and a fellow inmate killed. Dufur pled guilty to an additional federal charge based on his escape attempt and was sentenced to ten years to life for the murder of the customs inspector, ten years for the assault of the customs inspector, and one year for the escape attempt, all with the possibility of parole. California has issued a detainer for the remainder of Dufur's initial life sentences on his first two murder convictions.

Dufur became eligible for release on parole pursuant to 18 U.S.C. § 4206(d) on September 24, 2016. Prior to that date, the Commission held a parole hearing to determine whether either of the two § 4206(d) exceptions — frequent or serious violations of institution rules or a reasonable probability of recidivism — applied to Dufur. At the hearing, Dufur testified that he had accepted responsibility for the death of the officer and the escape attempt and that he reflects daily about the impact of his actions and feels sorrow and shame.

The Commission denied release. It found that "there is a reasonable probability that [Dufur] will commit any Federal, State or local crime," because Dufur's history of escapes and of committing violence to evade authorities made him "still . . . a high risk for violent crime." Notice of Action (July 25, 2016) (hereinafter, "Initial Decision"). The Commission "acknowledge[d]" that Dufur had "completed substantial program[m]ing including the Challenge Program in September

2009 and the Code Program," but concluded that in light of "the nature and seriousness of [Dufur's] repetitive violent criminal behavior . . . [he] remain[s] a threat to the community" if released. *Id.* The Commission stated that it would review Dufur's case again, pursuant to § 4206(d), in about two years' time.

Dufur filed an administrative appeal arguing, among other things, that the Commission had violated § 4206(d) in denying him parole since he had served enough time to qualify for release and had a clean disciplinary record dating as far back as 2001. He also argued that the Commission was not permitted to deny a § 4206(d) release based on the nature of the original offense and should not have considered the postconviction escape attempt because he had been separately convicted and sentenced for that offense.

Upon review, the Initial Decision was affirmed. Reiterating that the escape attempt could properly be considered because Dufur was "in custody in connection with [his] federal offense" at the time, Notice of Action on Appeal (Nov. 25, 2016) (hereinafter, "Appeal Decision"), the Appeal Decision also clarified that although § 4206(d) is commonly referred to as providing for "mandatory parole," it in fact offers only "a presumption of mandatory parole release," provided the Commission finds that neither of the two statutory exceptions applies. *Id.* In Dufur's case, the Commission had "found there was a reasonable probability that [Dufur] would commit a Federal, State, or local crime if released." *Id.* "In addition," the Appeal Decision stated, "the Commission could have found that [Dufur] seriously violated institution rules, by escaping on October 14, 1979." *Id.*

Dufur filed a civil action seeking judicial review of the denial of parole in the U.S. District Court for the District of

Columbia. The Commission moved to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Dufur had not plausibly alleged a due process violation, "because the denial of parole does not implicate any protected liberty interest," and that he had not plausibly alleged a violation of § 4206(d), "because 'mandatory' parole is not really mandatory." *Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 15 (D.D.C. 2018). The district court considered, *sua sponte*, the implications for its subject matter jurisdiction of "whether Dufur's claims sound in habeas and, if so, whether and how that affects the Court's authority to adjudicate them." *Id.* at 16. The court explained that the habeas channeling rule requires prisoners to "proceed in habeas" if "success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" *Id.* (quoting *Davis v. U.S. Sent'g Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013)). Even assuming Dufur's claims sounded in habeas, the district court concluded that "the habeas channeling rule is not jurisdictional in the sense that the Court has a duty to consider the defense *sua sponte*." *Id.* If it were to treat Dufur's claims as seeking habeas relief, the court ruled that the applicable procedural rules were waivable and were in fact forfeited by the Commission, which did not raise them in its motion to dismiss. *Id.* at 17. On the merits, the district court ruled that Dufur had not plausibly alleged that the Commission violated either Dufur's due process rights or § 4206(d), *id.* at 19–20, 26, and dismissed the complaint, *id.* at 27.

Dufur appeals. Denying summary affirmance, this court appointed Amicus Curiae to present arguments in support of Dufur, who was proceeding *pro se* as he had in the district

court. Dufur joined the briefs submitted by Amicus, declining to submit his own briefing.[1]

## II.

This court reviews *de novo* both the district court's dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), *Daniel v. Fulwood*, 766 F.3d 57, 61 (D.C. Cir. 2014), and its subject matter jurisdiction analysis, *see Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018). For the following reasons, this court finds no error in the district court's jurisdictional analysis or its conclusion on the merits.

## A.

Regarding jurisdiction, the habeas channeling rule requires that certain claims be asserted through a habeas petition. *Davis*, 716 F.3d at 662–63. Our rule derives from the Supreme Court's interpretation of the federal habeas corpus statute, 28 U.S.C. § 2254, beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973). In *Preiser*, the Court held that a prisoner may not challenge "the fact or duration of his confinement" in a civil action brought under 42 U.S.C. § 1983 because habeas actions are subject to additional procedural requirements not applicable to other civil actions. *Id.* at 489. Allowing prisoners to bring § 1983 suits that effectively challenge the validity of their convictions or the duration of their incarceration would create a workaround to the habeas requirements. *Id.* at 489–90. Rather, the sole remedy for assertedly unlawful incarceration is through habeas corpus. *Id.* In a series of cases, the Court has refined this rule to identify the relief at "the core of habeas corpus" that must be brought in a habeas petition. *Wilkinson v.*

---

[1] The court appreciates court-appointed Amicus's assistance in this appeal.

*Dotson*, 544 U.S. 74, 82 (2005) (quoting *Preiser*, 411 U.S. at 489); *see Skinner v. Switzer*, 562 U.S. 521, 533–36 (2011); *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004); *Heck v. Humphrey*, 512 U.S. 477, 480–87 (1994).

The dissent invokes *Wolff v. McDonnell*, 418 U.S. 539 (1974), but that case sheds no light on whether the district court lacked jurisdiction here and offers no support for the dissent's view that this court "should have ordered [Dufur's] claim dismissed without pronouncing on the merits," Dis. Op. at 3. In *Wolff*, the habeas claims were dismissed for failure to exhaust administrative remedies, not for lack of subject matter jurisdiction. *See* 418 U.S. at 544, 554–55; *McDonnell v. Wolff*, 483 F.2d 1059, 1064 (8th Cir. 1973). For present purposes, *Wolff* would appear to stand for the unremarkable proposition that, where a prisoner brings a claim sounding in habeas combined with other claims, a court can dismiss the habeas claim for an appropriate reason while proceeding to rule on the merits of the other claims.

**1.** The Commission appears to contend on appeal that the principle of habeas channeling bars Dufur's action because the relief Dufur seeks would have the effect of shortening the duration of his confinement. Even assuming, however, that Dufur's claims lie "at the 'core of habeas,'" *Davis*, 716 F.3d at 662, the claims are not barred. This court and the Supreme Court have indicated that the habeas channeling rule is not a jurisdictional bar and therefore can be forfeited if a defendant fails to assert it. *Muhammad*, 540 U.S. at 755; *Skinner v. Dep't of Just.*, 584 F.3d 1093, 1100 (D.C. Cir. 2009). And the district court here reasonably concluded based on the Commission's motion to dismiss that it had forfeited any habeas channeling defense. *Dufur*, 314 F. Supp. 3d at 16. In any event, to the extent the Commission contends the habeas channeling rule is an issue of subject matter jurisdiction, this court need not definitively resolve that question. Even if the channeling

defense were not or could not be forfeited by the Commission, the district court treated Dufur's complaint as seeking habeas relief, analyzed it as such, and determined that the government's habeas-specific defenses were either forfeited or affirmatively waived by the Commission.

Courts construe liberally the pleadings of a *pro se* litigant. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *United States v. Palmer*, 296 F.3d 1135, 1143–44 (D.C. Cir. 2002). More particularly, courts may "recharacterize" a *pro se* litigant's filing "in order to place it within a different legal category" so as to "avoid inappropriately stringent application of formal labeling requirements or to create a better correspondence between the substance of a *pro se* claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381–82 (2003) (internal citations omitted). The authority to recharacterize a *pro se* complaint extends to the "longstanding practice" of construing as a habeas petition a "motion that a *pro se* federal prisoner has labeled differently." *Id.* at 377. And this court has done that, construing a complaint as a habeas petition even though it was not styled as such and proceeding to analyze it according to the requirements applicable to petitions for habeas corpus. *See Monk v. Sec'y of Navy*, 793 F.2d 364, 366 (D.C. Cir. 1986).

That is what the district court appropriately did here. *See Dufur*, 314 F. Supp. 3d at 16–17, 20. And while the dissent suggests that the district court could not have supposed it was acting as a habeas court because Rule 12(b)(6) purportedly does not apply to habeas cases, "responding to a habeas petition with a motion to dismiss is common practice," *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *Murray v. Carrier*, 477 U.S. 478, 483 (1986)).[2] So neither the Commission's filing

---

[2] *See* Rules Governing Section 2254 Cases in the United States District Courts, R. 5, 28 U.S.C. following § 2254, advisory

of a Rule 12(b)(6) motion to dismiss nor the district court's ruling demonstrates a consensus in the district court that the proceedings here were not in the nature of habeas corpus.

**2.** The Commission contends, nevertheless, that even if Dufur's complaint can properly be recharacterized as a habeas petition, the district court should have found Dufur's action barred by two habeas-specific procedural rules. First, Dufur's complaint does not comply with the "immediate custodian rule," under which "the proper respondent" in a habeas petition "is the warden of the facility where the prisoner is being held." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *see id.* at 434 (citing 28 U.S.C. § 2242). Second, Dufur violated the habeas venue rule, which requires habeas petitions to be filed in "the district of confinement." *Id.* at 443.

But as this court has held, and as the Supreme Court has strongly suggested, the immediate custodian rule and the habeas venue rule are waivable. *See Muhammad*, 540 U.S. at 755; *Ramsey v. U.S. Parole Comm'n*, 840 F.3d 853, 859 n.2 (D.C. Cir. 2016). The immediate custodian rule implicates personal jurisdiction, not subject matter jurisdiction; likewise, the requirement to file in the district of confinement concerns venue, not subject matter jurisdiction. *Ramsey*, 840 F.3d at 859 n.2. A habeas respondent thus forfeits these defenses by failing to raise them, and a district court, *sua sponte*, may properly decline to enforce either requirement. *See id.*; *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 (D.C. Cir. 1988). The Commission's suggestion that courts must address these rules

committee's note to 2004 amendment (acknowledging the practice of responding to a habeas petition with a "pre-answer motion to dismiss the petition" and noting that "revised Rule 4 permits that practice"); 16A Federal Procedure, Lawyers' Edition § 41:370 ("The respondent has the option of responding to a habeas corpus petition by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or a motion for summary judgment under Fed. R. Civ. P. 56.").

"notwithstanding the possibility of [their] waiver," Appellee's Br. 18, is meritless. The Commission never raised the immediate custodian rule in the district court, and it explicitly disclaimed any reliance on the habeas venue rule, stating that the district court could "[i]gnore" considerations of venue. Reply Mem. Supp. Mot. to Dismiss at 3–4, *Dufur*, 314 F. Supp. 3d 10 (No. 17-cv-677), ECF No. 13; *see* Mem. Supp. Mot. to Dismiss, *Dufur*, 314 F. Supp. 3d 10 (No. 17-cv-677), ECF No. 9. The district court deemed both arguments forfeited based on the Commission's complete omission of one and only glancing reference to the other, *Dufur*, 314 F. Supp. 3d at 17, and this court declines to disturb that reasonable conclusion. Although the Commission warns that deeming the immediate custodian and habeas venue defenses forfeited will invite forum shopping by federal prisoners, and district courts would do well to be alert to that possibility, it was the Commission's forfeiture that allowed Dufur access to this forum. The government is a frequent and sophisticated litigant capable of enforcing its own procedural rights and defenses.

The dissent, based on the Commission's passing reference to the habeas venue rule in its district court briefing, concludes the Commission preserved these defenses. Yet the district court carefully analyzed the forfeiture issue, *see Dufur*, 314 F. Supp. 3d at 16–17, and was in the best position to assess the positions taken by the parties before it. Because the district court reasonably ruled that the Commission's muddled, skeletal arguments did not assert a habeas venue defense, this court has no basis to second-guess that determination. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019).

**3.** The Commission also maintains that even if it were deemed to have forfeited these defenses, and even if the district court was not required to consider them *sua sponte* when addressing the Commission's motion to dismiss, the district court should have dismissed Dufur's complaint at the screening

stage because Dufur did not sue his immediate custodian in the district of his confinement. Under the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321–66 (1996) (codified as amended in scattered sections of 11, 18, 28, and 42 U.S.C.), courts screen prisoner civil suits soon after they are docketed, dismissing a prisoner's complaint if it is "frivolous," "malicious," "fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Although district courts "*may* use the occasion of section 1915A review to dismiss" a case on other grounds, *Thompson v. DEA*, 492 F.3d 428, 439 (D.C. Cir. 2007) (emphasis added), such as the immediate custodian rule, they are not required to do so, and the Commission has identified no authority suggesting that a mistaken non-dismissal at the screening stage can be reversible error. Moreover, if the district court overlooks a defect in a prisoner's complaint in its screening analysis, then the defendant may bring the defect to the court's attention in a motion to dismiss. The Commission neglected to do so here.

Finally, the Commission maintains that the district court should have transferred the case to the appropriate district court. But as the Commission itself recognizes, transferring venue would be the next logical step *after* concluding that venue was inappropriate in this district, an issue the court did not reach because the Commission forfeited it. *Dufur*, 314 F. Supp. 3d at 16–17, 17 n.3.

Because the district court's jurisdictional analysis was correct, the court turns to the merits of Dufur's claims.

**B.**

The 1976 Parole Commission and Reorganization Act, as amended, contemplates two routes to obtaining release on parole. The first route is discretionary parole, which is

available after a federal prisoner has served at least one-third of his sentence (or at least ten years, if the sentence is longer than thirty years). 18 U.S.C. § 4205(a). After that time, the Parole Commission has discretion to grant parole to "an eligible prisoner" who "has substantially observed the rules of the institution" provided the Commission determines that "release would not depreciate the seriousness of his offense or promote disrespect for the law" and that "release would not jeopardize the public welfare." *Id.* § 4206(a). The second route is so-called "mandatory parole" under § 4206(d).

Section 4206(d) provides for release after a prisoner has served a longer portion of his sentence:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however*, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

The Commission treats § 4206 as creating a rebuttable presumption in favor of parole. *See* Appeal Decision; *see also Bruscino v. True*, 708 F. App'x 930, 935 (10th Cir. 2017) (unpublished). Section 4206(d) creates two exceptions to "mandatory" parole: The presumption in favor of release is rebutted, and the Commission "shall not" release a prisoner

otherwise eligible for parole under this provision, if it finds either that he has "seriously or frequently violated institution rules" or that "there is a reasonable probability that he will commit any Federal, State, or local crime." 18 U.S.C. § 4206(d). Section 4206(d) does not provide a list of factors for the Commission to consider in determining whether a parole candidate has violated institution rules or is likely to recidivate.

Section 4207, however, directs that "[i]n making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant," the following factors:

> (1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
>
> (2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
>
> (3) presentence investigation reports;
>
> (4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge;
>
> (5) a statement, which may be presented orally or otherwise, by any victim of the offense for which the prisoner is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim; and
>
> [(6)] reports of physical, mental, or psychiatric examination of the offender.

Amicus, on Dufur's behalf, contends that a remand to the Commission is required because its denial of parole was based on both exceptions in § 4206(d) and it now declines to defend one of them. Alternatively, Amicus contends that even under the deferential standard of review that applies to Commission decisions, the denial of parole to Dufur should be reversed on the merits.

**1.** According to Amicus, the Commission based its decision denying parole on both § 4206(d) exceptions, finding that Dufur was reasonably likely to recidivate and that he had seriously violated institution rules. Affirming the Initial Decision denying parole, the Appeal Decision reiterated that Dufur was reasonably likely to recidivate and also observed that "the Commission could have found that [Dufur] seriously violated institution rules, by escaping on October 14, 1979." Appeal Decision. Amicus maintains that if either ground is infirm, then the entire decision must be set aside because the order did not make clear whether one ground alone would suffice to support the denial of parole. Amicus Br. 50–51. And because the Commission on appeal has not sought to defend the denial of parole on grounds of a serious violation of institution rules, Amicus maintains a remand is required.

The Commission, however, never rested on the institutional rules exception. The Initial Decision referred only to the "reasonable probability" that Dufur would recidivate. *See* Initial Decision. The Appeal Decision upheld that determination, reasoning that the Commission was permitted to consider Dufur's attempted escape and his offense of conviction in assessing Dufur's eligibility for parole. It also observed that the Commission "*could have found* that [Dufur] seriously violated institution rules, by escaping on October 14, 1979." Appeal Decision (emphasis added). That hypothetical phrasing does not suggest that the Commission viewed the

Initial Decision as making or resting on any finding on the institutional rules ground, nor that the Appeal Decision purported to do so. Instead, both orders, whether read separately or in combination, are clear that the parole denial rested on the Commission's finding that Dufur was reasonably likely to commit another crime. Therefore, the question is whether Dufur has alleged a plausible challenge to the merits of the recidivism risk finding.

**2.** Judicial review of the Commission's parole decisions is available in habeas proceedings but must accord great deference to the Commission as the factfinder in the first instance and as the decisionmaker whom "Congress has decided . . . is in the best position to determine when release is appropriate." *United States v. Addonizio*, 442 U.S. 178, 189 (1979). Reviewing courts therefore consider "whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons." *Bailey v. Fulwood*, 793 F.3d 127, 135 (D.C. Cir. 2015) (quoting *Furnari v. U.S. Parole Comm'n*, 531 F.3d 241, 247–48 (3d Cir. 2008)). "Parole authorities deprive an offender of due process only if their decisions are 'either totally lacking in evidentiary support or [are] so irrational as to be fundamentally unfair.'" *Ford v. Massarone*, 902 F.3d 309, 321 (D.C. Cir. 2018) (alteration in original) (quoting *Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002)).

Dufur contends that the Commission both exceeded its statutory discretion and violated his constitutional right to due process in finding there was a reasonable probability he would commit another crime. Amicus Br. 41–50. None of the four reasons offered in support of those claims is persuasive.

*First*, the Commission was permitted to consider the nature and seriousness of Dufur's offense when it made this

decision pursuant to § 4206(d). 18 U.S.C. § 4207 provides that when making parole determinations, the Commission "shall consider, if available and relevant," information including "official reports of the prisoner's prior criminal record," as well as any victim impact statement or presentence investigation report, both of which necessarily reflect on the nature and seriousness of the offense. Those factors are to be applied to determinations "under this chapter," 18 U.S.C. § 4207, not merely to discretionary parole decisions under § 4206(a).

The design of § 4206(d), Amicus states, renders those factors not "relevant," *id.* § 4207, to so-called mandatory parole determinations because the statute contemplates parole even for those serving life sentences, who presumably committed the most serious offenses. Considering that factor in the parole process thus unfairly ignores that the sentencing judge already weighed the seriousness of the offense and concluded that a sentence without the possibility of parole was not warranted. Reply Br. 20–21. Yet the plain meaning of the phrase "if . . . relevant" is that the Commission need not always consider every listed factor; it is a leap to read that innocuous phrase as suggesting that some of the factors are categorically irrelevant in certain kinds of cases. Typically, evidence is deemed relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." FED. R. EVID. 401. Here, § 4206(d) and § 4207, when read together, mandate an analysis of the probability of recidivism, and the nature of the offense of conviction is at least sometimes relevant to the probability that a parole candidate will commit another crime. Undoubtedly, a goal of the federal parole regime was to encourage and reward rehabilitation, and a parole candidate's record while incarcerated is highly relevant to whether there is a reasonable probability they will recidivate. *See* Conf. Rep., at 25. Yet Congress viewed rehabilitation as a relative matter, *id.*, and allowed the Commission more readily

to find a reasonable probability of recidivism where a parole candidate's history demonstrates a pattern of repeated violent conduct than where a candidate's offense was isolated or nonviolent. Nor does the structure of § 4206(d), which the Commission treats as establishing a rebuttable presumption in favor of parole, require the Commission to ignore the nature of the offense. The presumption simply orders the analysis: release on parole is available, unless the candidate's disciplinary record or risk of reoffending persuades the Commission otherwise.

The legislative history of the parole statute underscores this reading of the text. *See Sierra Club v. EPA*, 353 F.3d 976, 988 & n.1 (D.C. Cir. 2004). The Conference Report on the 1976 Parole Act noted that the "nature and circumstances of the offense" and the record of "institutional behavior" are the two "most significant [factors] in making equitable release determinations" under § 4206 as a whole. *Id.* at 25; *see Sierra Club*, 353 F.3d at 988 n.1. According to the Report, § 4206(d) was designed to provide "*more liberal* criteria for release on parole," not entirely *different* criteria for release on parole compared to § 4206(a). *See* Conf. Rep., at 27 (emphasis added). So while the balance shifts toward favoring parole for prisoners having served a significant portion of a long sentence, the factors relevant to discretionary parole determinations, including the nature and seriousness of the offense, are not necessarily beyond the appropriate analysis. Rather, Congress intended that "in making *each* parole determination, [the Commission] shall recognize and make a determination as to the relative severity of the prospective parolee's offense." *Id.* at 25 (emphasis added). The Commission did so here and stated that it would reweigh the contours of Dufur's case at regular intervals. Initial Decision; *see Dufur v. U.S. Parole Comm'n*, No. 18-2156, 2020 WL 2198049, at *2 (D.D.C. May 6, 2020).

In a similar vein, the absence of a reference to the nature and seriousness of the offense criterion from § 4206(d) — as compared to § 4206(a), which explicitly directs the Commission to consider that factor — does not indicate that Congress intended to preclude the Commission from considering it in mandatory parole determinations. Section 4206(d) offers no criteria for the Commission to consider in evaluating whether a parole candidate is "reasonabl[y]" likely to recidivate or has "seriously or frequently" violated prison rules, so the absence of that particular criterion is not especially noteworthy. More likely, Congress intended the comprehensive listing in § 4207 to apply to determinations under § 4206(d). *See Johnson v. U.S. Parole Comm'n*, 419 F. App'x 438, 439 (5th Cir. 2011) (per curiam) (unpublished).

*Second*, the Commission did not rest its decision solely on the nature of Dufur's offense. Amicus maintains that even if the Commission was not wholly precluded from considering Dufur's offense and criminal history, it could not rest solely on those factors, because that would effectively nullify the judgment of the sentencing court. Amicus Br. 43–44. In looking only at Dufur's offense conduct and criminal history, Amicus maintains, the Commission converted Dufur's sentence to one of life without the possibility of parole because the die was cast before Dufur ever began serving his federal sentence and no amount of good behavior could alter the Commission's thinking. And the Commission also acted contrary to the statutory scheme, Amicus maintains, because § 4206(d) applies even to the most serious offenses, which suggests that mandatory parole ought not be denied solely because of the seriousness of the offense.

The Commission did not limit its inquiry solely to the nature and seriousness of the offense of conviction and Dufur's criminal history. Rather, the Commission acknowledged and

assessed Dufur's record of good behavior and rehabilitation while incarcerated. In particular, the Commission noted in its Initial Decision that Dufur had "completed substantial programming including the Challenge Program in September 2009 and the Code Program," and weighed those positive efforts against "the nature and seriousness of [Dufur's] repetitive violent criminal behavior," including Dufur's attempted escape while in federal custody for this offense. Initial Decision. On balance, the Commission concluded that there remained a reasonable probability that Dufur would reoffend. *Id.* Given the deference owed to the Commission, the court cannot conclude that the Commission's balancing exceeded its wide discretion to determine whether there was a "reasonable probability," if released at that time, "that [Dufur would] commit any Federal, State, or local crime." 18 U.S.C. § 4206(d). Nor was the Commission "irrational," *Ford*, 902 F.3d at 321, to conclude that any factors suggesting a decreased risk of recidivism paled in comparison to Dufur's criminal record, which includes three murders, a successful escape, and another escape attempt in which others were killed and injured. Thus, the court has no occasion to decide whether the Commission would have violated due process had it given no consideration to Dufur's record while incarcerated and denied parole based solely on his pre-sentencing conduct.

*Third*, the Commission's findings were not irrational by failing to account in the Initial Decision for the substantial body of social-science research showing that individuals of Dufur's age are unlikely to recidivate. Amicus Br. 44–47. The Commission was well aware of Dufur's age. Its failure to reference explicitly the "aging out of crime" phenomenon, *see* Appellant's Br. 45, hardly rendered its decision "so irrational as to be fundamentally unfair," *Ford*, 902 F.3d at 321 (internal quotation marks omitted). In *Ford*, the court upheld a Commission order denying parole against a due process

challenge where the parole candidate's criminal record included three murders, one of which he broke into prison to commit. *Id.* at 321. Dufur's similar record provided the Commission a rational basis to find he was reasonably likely to reoffend.

*Fourth*, the Commission's decision to deny release was not irrational for omitting that Dufur has an outstanding life sentence awaiting him in California when it determined that his release posed "a threat to the community." Initial Decision. Amicus has not pointed to any authority suggesting that the Commission was required to assume that the State of California would enforce its detainer whereby Dufur would resume serving his state prison sentence. Further, although the Initial Decision phrased the finding in terms of "a threat to the community," the statutory exception requires only that the Commission address whether a parole candidate is reasonably likely to commit another crime, so Amicus's focus on whether Dufur would endanger "the community" is misplaced. As Dufur's record demonstrates, moreover, it is possible to commit a crime while imprisoned.

Accordingly, because the district court had subject matter jurisdiction over Dufur's complaint and could properly conclude that Dufur has not plausibly alleged that the decision to deny parole was irrational or contrary to the parole statute, as amended, the court affirms the dismissal of the complaint.

RANDOLPH, *Senior Circuit Judge*, dissenting,

This should have been a rather straightforward appeal but I am afraid the majority opinion has turned it upside down, inside out and back to front.

Artie Dufur is serving a life sentence for murder. He was confined in a federal prison in West Virginia at the time he filed his habeas petition but has now been moved to a federal prison in California. Dufur sued the United States Parole Commission in the United States District Court for the District of Columbia.[1] His complaint alleged that the Parole Commission violated its regulations and deprived him of due process at his last parole hearing. The district court rejected those claims in a well-reasoned opinion. *Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 21–26 (D.D.C. 2018). Dufur has not appealed that aspect of the court's judgment.

Dufur's complaint also presented one other claim: that the Parole Commission erred in deciding that he was not entitled to immediate release from confinement pursuant to 18 U.S.C. § 4206(d). The district court upheld the Parole Commission's decision on the merits of this claim, *Dufur*, 314 F. Supp. 3d at 19–21, and now the majority opinion does the same. Maj. Op. at 12–21.

Precedent of the Supreme Court dictates that rather than deciding Dufur's immediate-release claim on the merits, this court and the district court should have simply dismissed it.

Here is the law. When a federal prisoner challenges his imprisonment and "success on the merits will . . . 'shorten its duration,'" *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666

---

[1] Dufur invoked federal question jurisdiction (28 U.S.C. § 1331), mandamus (28 U.S.C. § 1361) and the All Writs Act (28 U.S.C. § 1651(a)).

(D.C. Cir. 2013) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)), his sole remedy is a writ of habeas corpus. *Id.* In a habeas case, the prisoner must bring his petition against the "warden of the facility where the prisoner is being held." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Al-Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004). This requirement, reflecting habeas corpus tradition (*id.*), is embodied in the statutes governing habeas proceedings for federal prisoners (28 U.S.C. §§ 2242, 2243). The third prerequisite for bringing a habeas corpus action naturally follows: the prisoner must file his habeas petition in the district of his confinement. *Padilla*, 542 U.S. at 443.[2]

Therefore, with respect to Dufur's claim for immediate release, he invoked the wrong cause of action in the wrong court against the wrong defendant.

*Wolff v. McDonnell*, 418 U.S. 539 (1974), thus controls the disposition of this appeal. As here, the prisoner in *Wolff* brought a civil action combining what amounted to a habeas claim with claims dealing with procedural due process. *Id.* at 553. As to the claim sounding in habeas (restoration of good-time credit), the Supreme Court affirmed the Eighth Circuit's dismissal of the claim as one on which relief could not be granted,[3] but held that the other claims were properly before the district court and the

---

[2] "Requiring prisoners to litigate where they are confined . . . not only distributes business among the district courts and circuits but also allows important issues to percolate through multiple circuits before the Supreme Court must review a disputed question." *Al-Marri*, 360 F.3d at 710.

[3] Relief could not be granted on the habeas claim in *Wolff* because the state prisoners there had not exhausted their state remedies. *See McDonnell v. Wolff*, 483 F.2d 1059, 1064 (8th Cir. 1973).

court of appeals. *Id.* at 554–55. Dufur's case presents the same situation. Dufur had a habeas claim and, as in *Wolff*, our court should have ordered the claim dismissed without pronouncing on the merits.[4]

This brings me to the majority's contention that the Parole Commission "explicitly disclaimed any reliance on the habeas venue rule, stating that the district court could '[i]gnore' considerations of venue." Maj. Op. at 11. There are two things wrong with this astounding assertion. The first is that the Parole Commission did just the opposite – it explicitly relied on lack of habeas venue. In support of its motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Parole Commission wrote: "[T]o the extent that Dufur's substantive due process claim rests upon his misinterpretation of mandatory parole as requiring his release by September 24, 2016, that is a claim that sounds in habeas . . ." and "[t]his [c]ourt is an improper venue for any habeas claim because Dufur is not in custody in this District." R. Doc. 9, at 5; *see also* R. Doc. 13, at 5 (reply mem.) (repeating this sentence). Thus, Dufur had – in the words of Rule 12(b)(6) – failed "to state a claim upon which relief can be granted." That is how the Supreme Court has described defective habeas claims. *See, e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

The second thing wrong with the majority's assertion perhaps explains its mistakes. The Parole Commission did not state, as the majority supposes, that "the district court could '[i]gnore' *considerations* of venue." Maj. Op. at 11 (emphasis

---

[4] That the Parole Commission's brief on appeal did not cite *Wolff* is of no moment. A federal court must consider a precedent that has come to the court's attention before its final decision. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994).

added). The word "ignore" appears only in a caption to the Commission's reply memorandum in the district court. The caption refers only to Dufur's venue claims, not to considerations of venue in general, as the majority thinks. The caption read: "The Court May Ignore Dufur's . . . Venue Argument[]." R. Doc. 13, at 4. What was Dufur's venue argument? That the court should not transfer the case to West Virginia nor dismiss the case without prejudice for lack of venue. But the Parole Commission was not advocating a transfer. Nor was the Commission arguing for a dismissal without prejudice. The Commission was urging an outright dismissal under Rule 12(b)(6) because Dufur sued the wrong person in the wrong court.

The majority opinion also asserts that the Parole Commission waived an objection to personal jurisdiction. Maj. Op. at 10–11. This too is inscrutable. It would perhaps make sense if Dufur had sued the West Virginia warden in Washington, D.C. and the warden failed to object to the lack of personal jurisdiction. But Dufur's suit in D.C. was against the Parole Commission; the Parole Commission is headquartered in D.C.; and it was properly served in D.C. The Commission could hardly have waived an objection to personal jurisdiction when it had no objection to waive.

One final note. There is a suggestion in the majority opinion that the district court thought it was acting as a habeas court. Maj. Op. at 8–9. That is not an accurate depiction of what the district court stated. *See Dufur*, 314 F. Supp. 3d at 20. The giveaway is this: Rule 12(b)(6) does not apply in habeas cases.[5] *See Browder v. Dir., Dep't of Corrections of Ill.*, 434

---

[5] The Federal Rules of Civil Procedure "apply to proceedings for habeas corpus" only "to the extent that the practice in those proceedings . . . is not specified in a federal statute." Fed. R. Civ. P.

U.S. 257, 269 n.14 (1978); *Banister v. Davis*, 140 S. Ct. 1698, 1714–15 (2020) (Alito, J., dissenting).

---

81(a)(4)(A).  The procedural rules governing Dufur's habeas claim can be found in 28 U.S.C. § 2243, because his habeas claim is one that must be brought under 28 U.S.C. § 2241.  *See Habeas Relief for Federal Prisoners*, 31 ANN. REV. CRIM. PROC. 1981, 1981–82 n.2676 (2002) ("A § 2241 petition must be used to challenge actions of the U.S. Parole Commission in connection with a prisoner's sentence."). Those rules do not include anything about waiver of the habeas venue rule.  In fact, section 2241 explicitly limits the ability of district courts to issue writs of habeas corpus only "within their respective jurisdictions."